IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:12CV161-RLV

| | | |
|---|---|---|
| ROBIN Y. UPRIGHT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Memorandum and Order** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment and Memorandum in Support of Summary Judgment (Docs. 10, 11), filed on April 12, 2013, and Defendant's Motion for Summary Judgment and Memorandum in Support of Summary Judgment (Docs. 14, 15), filed July 9, 2013.

Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge David C. Keesler was designated to consider and recommend disposition of the aforesaid motions. Accordingly, in a Memorandum and Recommendation ("M & R") filed on December 27, 2013, the Magistrate Judge recommended that the Court deny Plaintiff's motion, grant Defendant's motion, and affirm the Commissioner's decision denying benefits. (Doc. 16). Plaintiff timely filed Objections to the Memorandum and Recommendations on January 10, 2014. (Doc. 17). The Commissioner submitted its Reply on January 27, 2014. (Doc. 18).

At the time of her original application for social security Disability Insurance Benefits ("DIB"), Plaintiff Robin Y. Upright ("Upright") was forty-six years old. (R. 44). Upright has a ninth grade education and has previously worked as a machine operator and a house cleaner. (R.

44–45). The alleged date of disability is October 28, 2008. (R. 44). Plaintiff represents that she has been unable to work since 2008 when she had two herniated discs and two collapsed discs in her neck. (R. 45). Upright underwent surgery on her neck in December 2008. (R. 46). Four discs were replaced and a metal plate put in to resolve these issues. (R. 46).

In support of her application for DIB, Upright contends that she experiences debilitating pain in her neck, back, hip, numbness in her arms, elbows, and fingers, as well as swelling, muscle spasms, muscle weakness, and fatigue as a result of degenerative disc disease of the cervical and lumbar spine. (R. 44). Upright also complained of hypertension, side effects from medications, and panic attacks. (R. 30).

During the evidentiary hearing before the ALJ, Upright described her pain as feeling "[l]ike somebody stabbing me." (R. 47). Upright testified that her average daily pain ranged from a level 6 to 8 on a scale of 1 to 10. (R. 48). Upright testified that her pain worsened if she walked or lifted anything and that the swelling of her hands, neck, feet, and legs required her to elevate her legs above her heart for a "[c]ouple hours." (R. 48). Upright stated that she could sit for no longer than thirty minutes and stand for no more than twenty minutes without experiencing pain. (R. 52–53). According to Upright, she averaged only four to five hours of sleep a night due to the need to position herself a certain way. (R. 49). Upright explained that she took hour-long naps three times a week. (R. 49). During the evidentiary hearing, Plaintiff's counsel represented that the occupational base available for Plaintiff would be further eroded by Upright's need "to take frequent unscheduled breaks" and "inability to maintain punctual attendance." (R. 44).

A summary of the ALJ's sequential evaluation process and decision follows. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v). At step one, the ALJ noted that Upright has not engaged in

substantial gainful activity since the alleged onset date, October 28, 2008. (R. 26).

At step two, the ALJ found that Upright suffers from the following medically severe impairments: degenerative disc disease of the cervical region of the spine, obesity, and mood disorder.[1] (R. 26−27). Upright's hypertension, gastroesophageal reflux disease, and degenerative disc disease of the lumbar region of the spine were not deemed to be severe impairments.[2] (R. 27−28).

At step three, the ALJ did not find that Upright's severe impairments, or combination thereof, satisfied the criteria for any listed impairment. (R. 28). In evaluating the criteria for a mental impairment listing under Listing 12.04, the ALJ found Upright experienced only "mild" or "moderate" restrictions (as opposed to a "marked" restriction). (R. 28). Specifically, the ALJ determined that Upright experienced "mild" difficulties in the areas of daily living and social functioning and "moderate" difficulties with regard to concentration and persistence or pace. (R. 28−29). There is no claim or evidence that Upright's mood disorder caused her to experience episodes of decompensation. (R. 29). The record revealed that Upright had not experienced an anxiety attack in more than a year and had not received any inpatient or outpatient mental health treatment to address her alleged symptoms of anxiety since the alleged onset date of disability. (R. 29 / Exh. 18F).

As for Upright's residual functional capacity ("RFC") and step four of the evaluation process, the ALJ determined that Upright retained the capacity to perform "light" and "unskilled" work subject to limitations including (i) a sit/stand option, and (ii) an inability to

---

[1] The cervical region of the spine refers to the seven vertebrae located in the neck. *See, e.g.*, Nat'l Inst. of Health, http://www.ninds.nih.gov/disorders/sci/detail_sci.htm (last updated April 16, 2014).

[2] The lumbar region of the spine refers to the five lumbar vertebrae in the lower back. *See, e.g.*, Nat'l Inst. of Health, http://www.ninds.nih.gov/disorders/sci/detail_sci.htm (last updated April 16, 2014).

have concentrated exposure to hazards such as moving machinery and unprotected heights.[3] (R. 29). The ALJ also determined that Upright's reaching was limited to overhead frequent bilaterally and that Upright could only balance, stoop, kneel, crouch, crawl, and climb ramps or stairs occasionally. (R. 29).

During the evidentiary hearing, the ALJ asked a Vocational Expert ("VE") to opine on the availability of jobs in the national economy for a person capable of: "the full range of light work"; "[a] sit/stand option on an occasional basis required"; [r]eaching is limited overhead to frequent bilaterally; "can only occasionally climb, balance, stoop, crouch, kneel or crawl"; there is "no concentrated exposure to hazards such as moving machinery or unprotected heights"; and "limited to unskilled work." (R. 55). The VE testified that such hypothetical individual would maintain the residual functional capacity to perform work as a cashier, bench assembler (sitting at a bench to assemble) and carding machine operator (a carder). (R. 56). According to the VE, if Upright required approximately one-hour naps three or more times a week while on the job, competitive employment options would be eliminated. (R. 56–57). Similarly, the VE testified that if Upright's impairments caused intermittent, unpredictable absences (whether for several hours, days, or weeks) at least three to five times a month, this would also likely rule out competitive employment. (R. 57).

Based on the record as a whole, including the VE's professional opinion, the ALJ determined at step five that jobs exist in significant numbers in the national economy that Upright can perform. (R. 34). The ALJ ultimately found that Upright was not disabled and not entitled to disability benefits.

I.  **Standard of Review**

---

[3] Light work is defined as "lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently, sitting for up to 6 hours during an 8-hour workday, and standing or walking for up to 6 hours during an 8-hour workday." 20 C.F.R. § 404.1567(b).

In reviewing a denial of benefits under the Social Security Act, the Court may not conduct a *de novo* review of the decision of the Administrative Law Judge ("ALJ") but rather must examine the record to determine whether the Commissioner's findings of fact are supported by substantial evidence and whether the decision is in accordance with the law. 42 U.S.C. § 405(g); *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). The district court reviews *de novo* only those portions of the Memorandum and Recommendation to which specific objections have been raised. 28 U.S.C. § 636(b)(1). *De novo* review is not required when an objecting party raises only general or conclusory objections, or when an objection is essentially identical to an argument raised in a motion for summary judgment without further reference to the Memorandum and Recommendation. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *Eaker v. Apfell*, 152 F. Supp. 2d 863, 864 (W.D.N.C. 1998). Accordingly, the Court conducts a careful review of the entire Memorandum and Recommendation, as well as a *de novo* review of those issues specifically raised in objection to the Memorandum and Recommendation.

**II.     Specific Objections to the Memorandum and Recommendation**

Plaintiff specifically objects to the M & R on the basis that the Magistrate Judge improperly recommends this Court affirm the ALJ's and the Commissioner's ultimate determination given the following alleged errors.

1) The ALJ did not adequately explain his treatment and evaluation of the opinion of Upright's treating nurse practitioner pursuant to 20 C.F.R. 404.1527(c) via SSR 06−03p;
2) The ALJ's analysis of Upright's credibility was flawed;
3) The ALJ failed to provide explanation concerning any physical or mental limitations associated with Plaintiff's obesity pursuant to SSR 02−01p; and

4) The Commissioner provided and accepted post-hoc rationale of the ALJ's decision.[4]

**1. Medical Evidence Provided by Plaintiff's Nurse Practitioner, Judy Keighron**

Plaintiff Upright contends that the ALJ did not adequately explain the weight attributed to the findings and opinion of her nurse practitioner, Judy Keighron, FNP ("Keighron"), Greenbriar Primary Care, PA, and faults the Magistrate Judge for excusing the ALJ from explaining consideration of the relevant factors within 20 C.F.R. § 404.1527(c) via SSR 06-03p.[5]

In addition to presenting medical evidence from licensed medical doctors, under 20 C.F.R. § 404.1513(d), a plaintiff is permitted to submit evidence from "other sources."[6] Nurse

---

[4] The issues identified by the parties as issues three and four pertain to the ALJ's treatment of claimant's obesity and are discussed together.

[5] The factors Plaintiff refers to include those the ALJ must consider when reviewing an examining physician's opinion: 1) examining relationship; 2) treatment relationship; 3) supportability of the physician's opinion; 4) consistency of the opinion with the record; and 5) whether the doctor is a specialist. 20 C.F.R. § 404.1527.

Additionally, SSR 06−03p reads:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination of decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case*.

[6] In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources *to show the severity of your impairment(s) and how it affects your ability to work*. Other sources include, but are not limited to --
> (1) Medical sources not listed in paragraph (a) of this section (for example, *nurse-practitioners*, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);

20 C.F.R. § 404.1513(d)(1) (emphases added).

practitioners are expressly identified within Section 404.1513(d) as a permissible type of "other source" medical evidence. 20 C.F.R. § 404.1513(d)(1).  With respect to "other source" evidence, the ALJ need not assign controlling weight (or explain why controlling weight is not proper) since only an "acceptable medical source" can be considered a treating source.[7] *See Lane v. Astrue*, 2012 U.S. Dist. LEXIS 41468, \*\* 16−17 (W.D.N.C. March 9, 2012) (Howell, MJ.) (licensed clinical social worker was <u>not</u> a treating physician or psychologist; social worker opinion was <u>not</u> entitled to controlling weight); SSR 06−03p.  Instead, the role of "other source" evidence is to show the severity of an impairment or how it affected claimant's ability to work." *Lane*, 2012 U.S. Dist. LEXIS 41468, \* 17.  While the ALJ's task differs slightly in evaluating "other source" evidence, the record should nonetheless generally reflect the bases for the ALJ's determination as to the weight given opinions from "other sources."  *Lane*, 2012 U.S. Dist. LEXIS 41468, \* 17 ("The ALJ is free to conclude that [other source evidence] is entitled to no weight at all, provided that the ALJ explains that decision in the record.").  The record should "allow a claimant or subsequent reviewer to follow the [ALJ's] reasoning."  Id.

The ALJ adequately explained why little weight was attributed to the nurse practitioner's views concerning claimant's physical capacity to work.  In short, the ALJ determined that Keighron's medical opinion was inconsistent with other substantial evidence of record.

On January 18, 2011, Upright visited Keighron for purposes of supporting her application

---

[7] "Other source" evidence is not presumed to have controlling weight and does not fall within the familiar "treating physician rule," which provides that:

> "The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."

*Roberson v. Astrue*, 2011 U.S. Dist. LEXIS 148897, \* 8 (D.S.C. November 3, 2011) (citing 20 C.F.R. § 416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178  (4th Cir. 2001)).

for DIB.  Upright asked Keighron to complete a "Lumbar Spine Functional Residual Functional Capacity Questionnaire" ("LS RFC"), consisting of five pages of questions concerning the existence and severity of functional limitations related to Upright's alleged disability. (R. 427 / Exh. 19F).

According to Keighron, Upright's prognosis was described as "poor due to chronic C-spine pain."[8] (R. 421 / Exh. 19F, ¶ 3).  According to the LS RFC, Upright's symptoms included: "Chronic pain radiating to arms and numbness; Insomnia + fatigue related to pain." (R. 421 / Exh. 19F, ¶ 6).  Keighron indicated that Upright experienced constant pain − pain level 8 on a scale of 1 to 10.[9]  (R. 421 / Exh. 19F, ¶ 7).  Keighron noted that Upright experienced insomnia and fatigue associated with pain and did not believe Upright was a malingerer or that emotional factors contributed to the severity of her symptoms and functional limitations.  (R. 421−22 / Exh. 19F, ¶¶ 5, 8).

Keighron's LS RFC responses represent Plaintiff as falling within the most extreme categories of functional limitation.  The functional limitations identified by Keighron included: constant interference with attention and concentration; thirty minute limits on both sitting and standing at one time; an inability to either sit or stand / walk more than two hours during an 8-hour work day; ten minute walks every thirty minutes; and unscheduled breaks every ten to thirty minutes with breaks lasting an average of thirty minutes to an hour.  (R. 422−23 / Exh. 19F, ¶¶ 10, 13b−13d, 13g).  Keighron indicated that Upright was likely to be absent from work "more than four days a month" as a result of her impairment.  (R. 423 / Exh. 19F, ¶ 13m).  Attached to the LS  RFC is a one-page document entitled, "General Medical Opinion Re:  Physical Capacity

---

[8] Upright's degenerative disc disease in the lumbar region was not even deemed to be a "severe" impairment by the ALJ and Plaintiff has not specifically objected to that determination.

[9] Keighron's rating of Upright's pain exceeded Upright's rating.

To Do Work," also dated January 18, 2011. (R. 425 / Exh. 19F). Keighron checked the box marked "NO" in response to the direct question, "Is your patient capable of performing sustained work activities in an ordinary work setting on a regular and continuing basis (eight hours a day, five days a week)?" (R. 425).

Here, the ALJ considered the Keighron materials in rendering a decision as to eligibility for benefits, but nevertheless determined the Keighron findings should be given "little weight." (R. 32). The ALJ expressly found that the Keighron opinion was "not well supported by the medical evidence of record, including her own treatment notes (Exhibits 19F and 20F)."[10] (R. 32). The ALJ contrasted the Keighron limitations with the clinical findings (and functional limitations) of Dr. Ellis, a consultative examiner and two State agency RFC assessments. (R. 32). The ALJ explained that Dr. Ellis' opinion was "more consistent with the record as a whole, including her own physical examination findings and physical examination findings of other practitioners noted in the record." (R. 32). The ALJ awarded Dr. Ellis' opinion "great weight." (R. 32). The ALJ similarly determined that the State agency assessments were entitled to "great weight."[11] (R. 32).

Finally, Keighron's view concerning "disability" is not considered a medical opinion. *See* 20 C.F.R. § 404.1527(d)(3), 416.927(d)(3); s*ee Pascoe v. Astrue*, No. 11-226, 2012 WL

---

[10] The length of the professional treatment relationship between Upright and Keighron is unclear. Upright testified at the hearing before the ALJ that her current medical provider was "Judy Kern"[sic] and that treatment had been ongoing for five years. (R. 46). In Keighron's records, Upright is identified as a "new patient" to Keighron in August 2010. (R. 415). The same treatment notes reflect that Upright was "known to" Keighron; that Upright had come "to get established at [Keighron's] office. (R. 415).

[11] The state agency physicians' RFC opinions are persuasive given that these physicians possess a certain degree of expertise in applying the Act. *See* 20 C.F.R. § 404.1527(e)(2)(i) (describing State agency consultants as "experts in Social Security disability evaluation).

3528054, at *3 (W.D.N.C. July 23, 2012) (rec. dec. aff'd Aug. 14, 2012) (quoting SSR 96-5p, 1996 WL 374183). Disability determinations are within the province of the Commissioner.

In short, the Court finds that substantial evidence exists in the record to support the ALJ's (and the Commissioner's) decision to award "little weight" to the findings and opinion of Keighron.

**2. Credibility Determinations**

Upright challenges the ALJ's credibility determination by asserting the ALJ "failed to consider the extensive medical evidence of record . . . and only plucked out those that supported the conclusion he wanted to reach." (Doc. 17, 4). According to Upright, the ALJ's analysis concerning credibility is contrary to *Hines v. Barnhart*. 453 F.3d 559 (4th Cir. 2006). In *Hines*, the Fourth Circuit emphasized its teaching in *Walker v. Bowen*, which explained that:

> [P]ain itself can be disabling, and it is incumbent upon the ALJ to evaluate the effect of pain on a claimant's ability to function. Further, ***while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity***.

*Hines*, 453 F.3d at 564 (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989) (emphasis in original)). The *Hines* claimant suffered from sickle cell disease, a medical condition capable of causing the type of chronic pain described by Hines and a disease with a reputation for its absence of objective medical evidence to corroborate subjective complaints of pain. *Hines*, 453 F.3d at 565. The Fourth Circuit held in *Hines* that the ALJ erred by selectively citing evidence out of context concerning tasks claimant testified he was capable of performing and *ignoring unrebutted testimony* that claimant suffered from such pain and fatigue due to sickle cell disease that he was forced to lie down "half a day," was unable to do much around the house, and experienced "a lot of pains in his leg." *Hines*, 453 F.3d at 563−66. Between Hines' complaints of pain and the opinion of his long-term treating physician, there was undisputed record evidence

that Hines' pain caused him to lie down several hours a day and also experienced acute attacks of pain that typically took Hines up to a month to recover from. *Hines*, 453 F.3d at 566−67. The appellate panel found that by insisting that objective medical evidence support the claimant's subjective complaints of debilitating pain − none of which were inconsistent with the objective medical evidence that did exist − the ALJ applied an incorrect legal standard. *Hines*, 453 F.3d at 563−66.

Unlike the *Hines* case, the ALJ did not require objective evidence in considering Upright's complaints of pain.[12] (Def.'s Mem. In Supp., at 8) (Tr. 30−32). Likewise, the ALJ did not ignore undisputed subjective evidence. The ALJ accepted that Upright suffered from "chronic," "persistent" and "daily" pain. In the end, the ALJ did not credit Upright's testimony concerning the intensity of her pain <u>to the extent her complaints exceeded the RFC</u>. In addition to citing ample support for the RFC determination, the ALJ explained that Upright's assertion regarding pain was contrary to the observations and findings of various physicians who examined her as well as Upright's own reports concerning her progress following her surgery and prior to submission of her application for DIB.[13] (R. 30). One of the crucial inconsistencies noted by the ALJ was that Upright's surgery was documented as a success. However, during the

---

[12] *Hines* is factually distinguishable because the record as a whole tended to show that Hines could not work an eight-hour day on a continual basis. *Hines*, 453 F.3d at 566. The evidence here is that Upright does not experience any acute attacks of pain that lead to month-long recovery periods. Upright is also not required to lie down for several hours a day due to pain and fatigue.

[13] The ALJ noted that in 2009 Upright reported to physicians that she was recovering well from her surgery. (R. 30). The records from Dr. Sweasey, Dr. Rhyne, and Dr. Ellis document Upright's improvement in various respects, including decreased pain immediately following the procedure. (R. 30−31 / Exhs. 2F, 3F, 4F, 11F). The ALJ also noted that within a few months following surgery, Upright was in the process of going through a retraining program and vocational rehabilitation. (R. 31 / Exhs. 2F, 3F). Dr. Sweasey's treatment notes reveal Upright's description of her post-surgical progress as "steady, overall." (R. 31 / Exh. 2F). In August 2009, Upright reported to Dr. Rhyne that she had the ability to sit for eight hours, stand for six hours, and lift no more than 20 pounds, despite difficulty going from a kneeling to a standing position. (R. 31 / Exh. 4F). Dr. Ellis observed and opined that Upright had "no limitation in the amount that she can stand, walk, or sit and has no obvious postural, manipulative, or workplace environmental limitations." (R. 31−32 / Exh. 11F).

evidentiary hearing, Upright testified that her conditions did not get any better after her surgery. (R. 46). Upright's testimony that she obtained no relief from the 2008 surgery was inconsistent with the other record evidence and the ALJ recognized the contradiction. (R. 30−32).

Substantial evidence supports the ALJ's RFC findings.

### C. Obesity / Alleged Post-Hoc Rationalization

Finally, in her last specific objection to the M & R, Plaintiff contends that the ALJ failed to address whether her obesity caused any physical or mental limitations. In addition, Upright criticizes the Commissioner's attempt to provide post-hoc rationalization for (and the Magistrate Judge's acceptance of) the ALJ's treatment of, or omission of, discussion concerning, Upright's obesity.[14]

By all accounts, Plaintiff Upright weighs over two hundred pounds at 5'4" tall. (R. 76). The ALJ specifically noted that the claimant "weighed 204 pounds on October 4, 2007, had a body mass index (BMI) of 32.40 on May 15, 2009, and had a BMI of 36.67 on August 19, 2010 . . . ." (R. 27). The ALJ expressly recognized the need to consider the impact of Upright's obesity pursuant to SSR 02−01p, and found that "the claimant's obesity could exacerbate symptoms from her physical impairments, such as pain."[15] (R. 27).

Here, both the Commissioner and Magistrate Judge highlight that Upright did not complain about her weight to any of her medical providers or consultative examiners. (M & R, 10; Def.'s Mem. In Supp., at 20, 22). Moreover, Plaintiff did not discuss her obesity in

---

[14] Upright cites *Roberson v. Astrue* for this proposition. *See e.g., Roberson v. Astrue*, 2011 U.S. Dist. LEXIS 148897, * 14 (D.S.C. November 3, 2011) (*post hoc* examples of inconsistencies in medical opinion and record offered by the Commissioner, but not discussed by the ALJ, deemed ineffective as a justification for ALJ assigning less than controlling weight to a treating physician's opinion).

[15] SSR 02-01p provides for the ALJ's consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and also that obesity be considered in determining residual functional capacity.

connection with any particular functional limitation.  The Magistrate Judge found that Upright failed to carry her burden on this issue and was unable to show that obesity gave rise to any functional limitation not already considered by the ALJ and included in the RFC.  (M & R, 10). That is not to say that Upright's obesity was not considered by the ALJ in fashioning her RFC, or that obesity has not contributed to or exacerbated Upright's already identifiable functional limitations.  Indeed, the ALJ identified support in the record for each functional limitation, including the three limitations the ALJ recognized as associated with or potentially impacted by obesity.  (R. 32–33).  The ALJ explained that *additional physical limitations* described in the RFC assessment (beyond what is supported by objective medical tests), such as a prescribed sit/stand option on an occasional basis, were to account for Upright's obesity and her credible reports of pain.  (R. 32).

The undersigned agrees that substantial evidence supports the ALJ's decision.

**III.   Conclusion**

Plaintiff's Objections to the Memorandum and Recommendations will be <u>denied</u>.  After a careful review of the Memorandum and Recommendations, and the record as a whole, the Court finds the Magistrate's proposed findings of fact are supported by the record and the proposed conclusions of law are consistent with current case law.  Accordingly, the Court hereby accepts the Magistrate Judge's Recommendation that the Defendant's motion for summary judgment be allowed.

**IV.   Order**

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion for summary judgment is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is hereby **GRANTED** and that the Commissioner's decision in this case is **AFFIRMED**.

Signed: September 18, 2014

Richard L. Voorhees
United States District Judge